UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL BALLOU,<br><br>                Petitioner,<br><br>v.<br><br>TEREMA CARLIN,<br><br>                Respondent. | Case No. 3:09-CV-242-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this habeas corpus action is Respondent's Motion for Summary Dismissal. (Dkt. 14.) The Motion is fully briefed and ripe for adjudication. Both parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 9 & 12.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Having considered the parties' arguments contained in the briefing, and having reviewed the record in this matter, including the portions of the state court record provided by the parties, the Court has determined that oral argument is unnecessary and enters the following Order granting the Motion for Summary Dismissal.

**MEMORANDUM DECISION AND ORDER - 1**

# MOTION FOR SUMMARY DISMISSAL

## 1. Standard of Law

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." When considering dismissal, the Court construes the facts in a light most favorable to the petitioner. It is appropriate for the Court to take judicial notice of court dockets from state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Petitioner's only claim is a Fourth Amendment search and seizure claim. The threshold issue in a Fourth Amendment claim presented in a federal habeas corpus petition is whether the state provided the petitioner an opportunity for full and fair litigation of his claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976). If the federal district court determines that full and fair litigation of the claim took place in state court, then it cannot grant habeas corpus relief on the ground that the evidence was obtained in violation of the Fourth Amendment. *Id*.

The federal district court must first "inquire into the adequacy and fairness of available state court procedures for the adjudication of Fourth Amendment claims." *Sanna v. Dipaolo*, 265 F.3d 1, 8-9 (1st Cir. 2001) (internal citation omitted). If the court determines that the state court procedures are adequate, the inquiry generally ends there. *Id*. That is, "[s]o long as a state prisoner has had an opportunity to litigate his Fourth

Amendment claims by means of such a set of procedures, a federal habeas court lacks the authority, under *Stone*, to second-guess the accuracy of the state court's resolution of those claims." *Id*. at 9. Stated another way, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Petitioner bears the burden of establishing that the state courts did not consider the Fourth Amendment claim fully and fairly. *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977).

## 2. Facts and Procedural History

On November 26, 2004, Petitioner was driving a stolen car with no license plates, when he was spotted by police officers. He refused to stop, and later abandoned the vehicle and fled on foot. He briefly eluded officers, escaping to his own apartment, where he changed his clothes. Officers came to Petitioner's apartment and spoke with Petitioner's wife, Roxana Frank (Ballou). Petitioner tried to escape through the back window of the apartment while officers gaining entrance to the apartment, but he was apprehended by a police K-9 (canine) unit. Officers later entered the apartment again and found not only the clothing Petitioner had been wearing during the chase, but also burglary tools and stolen goods. (State's Lodging C-10, pp. 1-3.) As a result of the events of the day and the items found at the apartment, Petitioner was charged with felony eluding a police officer, grand theft, and being a persistent violator in criminal case

number CRF-04-25736 in the First Judicial District Court in Kootenai County, Idaho. (State's Lodging A-1, pp. 87-90.)

Petitioner's Fourth Amendment claim arises from the police entry into his apartment, and focuses specifically on whether his wife freely and voluntarily consented to officers entering and searching the apartment several times that day. Petitioner's appointed counsel filed a motion to suppress "all evidence and fruits thereof obtained by the State as a direct or proximate result of the warrantless armed invasion and search of [Petitioner's] private home." (*Id.*, pp. 115-16.)

The state district court scheduled an evidentiary hearing in the case. At the start of the hearing, the parties stipulated to admission of a four-hour DVD showing the actual dialogue between officers and Mr. Ballou's wife regarding entry into the apartment. The state district judge continued the hearing so that he could first watch the DVD. (State's Lodging A-3, pp. 6-15.)

After watching the DVD, the state court held the first evidentiary hearing. (*Id.*, p. 16.) The parties stipulated that the entry was warrantless. (*Id.*) Officer Christy Mattson testified that she noticed a car without license plates, she pursued it, the driver led her on a high speed chase, and then he fled on foot into the apartment complex. (*Id.*, pp. 17-25.) Officer Mattson described how she believed the suspect was Ballou from prior contacts with him, and that Ballou's wife (Roxana Frank) answered the door of the apartment after officers had knocked on the door 7 to 10 times. Officer Mattson testified that Frank initially did not consent to the officers entering the apartment, but it was her opinion that

**MEMORANDUM DECISION AND ORDER - 4**

Frank later gave permission because Frank "understood that I realized who the suspect was, she got quiet, and she seemed like she got kind of fearful and realized what was going on. And beginning–she began nodding in consent and basically moved from the doorway and allowed us entry." (*Id.*, p. 32.) Mattson testified that, at point, they made entry into the apartment for the purpose of pursuing a suspect who had committed several felonies. (*Id.*) Mattson testified that when she entered the apartment, she saw Ballou jumping out the back window. Mattson then left the apartment and did not re-enter.

On cross-examination of Mattson, Petitioner's attorney made several important points, comparing the DVD to Mattson's testimony: (1) the time was approximately 3:40 a.m.; (2) Frank was wearing nothing but a blanket; (3) it had been 40 minutes between the chase and the knocking on the apartment door; (4) Petitioner's wife had stated, "If you ain't got a warrant, you ain't coming in"; (5) a male officer said that "If you don't let us in, we're going to put you in custody, take you to a car, cuff you, put you in a car, and you're going to wait there until we go get a warrant"; (6) Frank was crying hysterically when she was nodding her head to indicate they could come in; (7) a female voice on the DVD said, "Push him out so the dog [canine unit] can get him"; and (8) Mattson was the only female officer at the scene. (*Id*., pp. 38-47.)

Officer Eric Anderson testified that he left his vehicle to pursue Petitioner on foot, and then lost track of Petitioner in the apartment complex. He called a K-9 unit for help. (*Id.*, pp. 55-56.) He believed it was an unsafe situation with Petitioner's wife in the apartment and officers not knowing whether someone would come out shooting. He

**MEMORANDUM DECISION AND ORDER - 5**

thought she could be handcuffed and removed from the situation, not because she was in trouble, but for safety reasons. He testified that Petitioner's wife went outside on the stairwell in her blanket while police were dealing with Petitioner, who had jumped out the window. (*Id.*, pp. 58-60.)

Officer Anderson testified that after Petitioner was apprehended by the K-9 unit, Petitioner's wife went to the apartment to change. Officer Anderson and Oyler remained in the living room, while Petitioner's wife changed. Petitioner's wife then came over and sat on the couch, and Anderson explained what had happened and that Petitioner would be taken to the police station and booked for felony eluding and possession. Anderson stated that he noticed there were a lot of electronic items in the living room, and asked Petitioner's wife about them. At some point, Anderson became aware that Petitioner had a warrant out for his arrest. (*Id.*, pp. 64-67.)

Anderson told Petitioner's wife that he wanted to search for the clothing Petitioner was wearing at the time of the chase. She hesitated giving consent, and then Anderson said she could give permission or be taken to another place like the police department while officers obtained a warrant. Petitioner's wife then consented to a search. (*Id.*, pp. 68-69.)

On cross-examination, Petitioner's attorney solicited from Anderson the fact that officers were already in the apartment when they began to ask about consent, and that they had not obtained verbal consent before following Petitioner's wife back into the apartment. (*Id.*, pp. 80-81.)

**MEMORANDUM DECISION AND ORDER - 6**

Detective Rodney Gunderson testified that Petitioner's wife verbally consented to a search of the apartment when he arrived some time later, and that she signed a consent form indicating that she had been advised of her constitutional right to refuse to consent to the search and agreeing to allow officers to remove any items from the apartment. (*Id.*, pp. 82-85.)

On cross-examination, Gunderson testified that nothing had been removed from the apartment prior to his arrival, but that the clothing had been moved from its location under a chair. (*Id.*, pp. 87-88.) Petitioner's counsel also brought out the fact that there were at least three armed, uniformed officers already inside the apartment when Detective Gunderson arrived with the consent form. (*Id.* at 86-87.)

After the state district court heard the evidence, it found that Officer Mattson had deviations in her testimony when compared to the DVD. The court noted that Mattson had "credibility problems," but her credibility issue did not bear on the credibility of the other officers. (*Id.*, pp. 122-23.) The state district court's conclusions were as follows:

> [T]he doctrine of hot pursuit did not justify the initial entry into the apartment. The district court also concluded that Ballou's wife's consent for the initial entry, if given, was not voluntary. However, the district court determined that the initial entry did not result in a search because Ballou jumped out the window as officers entered and the officers immediately left the apartment. The district court concluded that all of the subsequent entries were made with the voluntary consent of Ballou's wife.

(Idaho Court of Appeals Opinion, State's Lodging C-8, p. 3.) The trial court determined that because the subsequent entries were consensual, any evidence obtained from the searches would not be suppressed. (*Id.*, p. 124; State's Lodging A-1, p. 133.)

**MEMORANDUM DECISION AND ORDER - 7**

Petitioner's counsel filed a motion to reconsider. On October 19, 2005, the state district court heard additional testimony in a second evidentiary hearing on Petitioner's motion to reconsider. The original prosecutor, Mr. Baughman, was unavailable for the second hearing, and a stand-in prosecutor, Mr. Haynes, indicated that he had not been able to review the transcript of the first hearing. The Court noted that Mr. Haynes was at a disadvantage for that reason, and went ahead and held the hearing, allowing the attorneys to present their arguments in briefing at a later date. (State's Lodging A-3, pp. 126-129.)

At the second hearing, Roxana Frank (Ballou) testified that she could not attend the prior hearing because she had been on a rider at the Pocatello Women's Correctional Center. (*Id.*, p. 131.) She testified that when police officers pounded on her door at 3:00 a.m., she answered it, even though she was naked and had only a blanket wrapped around her. She testified that she told officers they needed a search warrant to come in. She stated she felt threatened by the number of officers at her door, but that they did not actually threaten her with arrest or transportation to another location if she would not allow them in. (*Id.*, pp. 131-134.) She indicated that the female officer (Mattson) told other officers that "they were going in." The officers entered, and then exited as soon as Petitioner had jumped out the window. (*Id.*, pp. 135-136.)

Petitioner's wife testified that when she went back to the apartment to change her clothes, Officer Anderson entered the apartment ahead of her. After she changed, she gave the officer permission to search for the clothing. Petitioner's wife testified that

**MEMORANDUM DECISION AND ORDER - 8**

because she felt threatened by the female officer earlier, she felt she had to allow the officers back into her apartment or she might be taken to jail. (*Id.*, pp 137-141.)

Petitioner's wife testified that officers searched through the clothing, finding a stolen credit card and burglary tools. Then four or five officers began searching the apartment. While the search was proceeding, Detective Gunderson approached her with the piece of paper. She asked him what would happen if she didn't sign it, and he said they would take her somewhere else. She was afraid to be taken to jail, and so she felt she had no choice but to consent. (*Id.*, pp. 143-147.)

The hearing was concluded, and the attorneys were permitted to submit closing argument in briefs. The parties also stipulated to supplementing the evidence by admitting the police reports of Detective Rodney Gunderson and Detective John Mason. (State's Lodging A-1, p. 167-174.) The state district court issued a written opinion denying the motion to reconsider on January 27, 2006. (*Id.*, p. 178-181.)

While Case No. CRF-04-25735 (2004 case) was pending, the State filed additional charges against him: 12 counts of grand theft, 14 counts of burglary, and a persistent violator allegation in a new criminal case, CRF06-3878 (2006 case). (State's Lodging B-1, pp. 6-24.) In a plea agreement, the parties stipulated that "all testimony, evidence, argument, pleadings, stipulations, and briefing" regarding the motion to suppress in the 2004 case would be admitted, and judicial notice of that case taken, in the 2006 case. (*Id.*, p. 31.) Petitioner entered conditional guilty pleas to all charges in both cases, preserving his right to appeal the trial court's denial of the motion to suppress. (State's Lodgings A-

**MEMORANDUM DECISION AND ORDER - 9**

1, pp. 182-83; B-1, pp. 27-28 & 30-33.) He was sentenced to concurrent terms of 15 years fixed, with 20 years indeterminate. His judgment of conviction was entered on May 22, 2006. (State's Lodgings A-1, pp. 209-213; B-1 pp. 78-82.)

Petitioner then filed direct appeals in each case, which were consolidated. On appeal, the Idaho Court of Appeals determined that all of the searches had been consensual. On the issue of whether Ballou's wife voluntarily consented to the entries, searches, and seizures, the Court of Appeals relied on many cases citing to the principle that a consent is not rendered involuntary by an officer's truthful explanation that a warrant to search could be obtained. (State's Exhibit C-10, p. 8.) "If Ballou's wife had denied the officer's initial request to enter the apartment and search for Ballou, then the officers would have been justified in precluding her from returning to the apartment where she potentially would have been able to destroy evidence or pose a threat to officer safety as they searched the apartment," the Court of Appeals reasoned. (*Id.*, p. 10.)

The Court of Appeals separately considered each subsequent entry and found that consent was voluntary given. It noted that the district court relied on the testimony of the officer who stated that the subsequent encounters with Ballou's wife were "cordial and friendly," and she "signed a written voluntary consent form that contained language informing her of her constitutional right to refuse consent." (*Id.*)

The Idaho Court of Appeals also considered the scope of the search, rejecting Petitioner's argument that his wife consented only to a search for the clothing. The Court determined that because Ballou's wife had "consented multiple times to various searches,

**MEMORANDUM DECISION AND ORDER - 10**

including searches for Ballou, clothing, and of the back room, . . . it was reasonable for the officers to believe that they had consent to search the entire apartment." (*Id.* p. 11.) Further, Ballou's wife never objected to the scope of the search. (*Id.*)

The Court of Appeals concluded:

> The district court correctly concluded that the hot pursuit doctrine did not justify the officers' initial entry into Ballou's apartment. However, the district court incorrectly determined that the officer's statement regarding obtaining a warrant to search for Ballou rendered the initial consent involuntary. The district court correctly determined that the officers received voluntary consents for their subsequent entries and searches of the apartment. We further conclude that the officers did not exceed the scope of the consents provided by Ballou's wife in their search of the apartment.

(State's Exhibit C-10, p. 13.)

On May 22, 2008, the Idaho Court of Appeals issued its opinion affirming the trial court's denial of Petitioner's motion to suppress. (State's Lodging C-8, pp. 5-11.) On June 11, 2008, the Idaho Court of Appeals issued an amended opinion, removing a footnote from its original opinion. (State's Lodging C-10.)

Petitioner's counsel submitted a petition for review, with briefing, before the Idaho Supreme Court, seeking to have that Court review the Idaho Court of Appeals' opinion on the suppression issue. The Idaho Supreme Court denied review on February 11, 2009. (State's Lodgings C-11 to C-14.)

3. Discussion

The state court record makes it clear that both the state district court and the Idaho Court of Appeals gave careful consideration to the evidence presented regarding the

**MEMORANDUM DECISION AND ORDER - 11**

entry, searches, and seizure. The Idaho Supreme Court also reviewed the issue. Petitioner was at all times represented by counsel, who zealously argued Petitioner's position. Clearly, many important points were made by Petitioner's counsel on cross-examination at the evidentiary hearing, as noted above. The state trial court permitted Petitioner to have a second evidentiary hearing so that the testimony of Petitioner's wife could be presented. The prosecution was unprepared for the second hearing, but the state district court required the prosecution to proceed. The parties submitted additional briefing, as well as supplementary evidence, and the state district court's decision was rendered thereafter.

In his Response, Petitioner does not argue that he was not afforded a fair opportunity to present his suppression issue, but instead argues the merits of the motion to suppress. However, at this stage of proceedings, the threshold inquiry is "is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d at 899.

The Court concludes that Petitioner was provided an opportunity for full and fair litigation of his claim in state court under the *Stone v. Powell* standard. As a result, the merits of the Fourth Amendment claim cannot be relitigated on federal habeas corpus review, and the Petition for Writ of Habeas Corpus will be dismissed with prejudice.

### CERTIFICATE OF APPEALABILITY REVIEW

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of

**MEMORANDUM DECISION AND ORDER - 12**

a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim of the denial of a constitutional right," as explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has dismissed Petitioner's claims on procedural grounds. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the procedural issues and that the issues presented are not adequate to

**MEMORANDUM DECISION AND ORDER - 13**

deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner may file a notice of appeal in this Court, and simultaneously file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b), **within thirty (30) days after entry of this Order**.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Dismissal (Dkt. 14) is GRANTED, and Petitioner's Petition is DISMISSED with prejudice.

2. The Court will not grant a Certificate of Appealability in this case. If Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to forward a copy of this Order, the record in this case, and Petitioner's notice of appeal, to the United States Court of Appeals for the Ninth Circuit.

DATED: September 13, 2010

**Honorable Ronald E. Bush**
**U. S. Magistrate Judge**